UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONACK CLERVOYANT,<br><br>         Petitioner,<br><br>v.<br><br>JEREMY CASEY, Senior Warden, Imperial Regional Detention Facility; et al.,<br><br>         Respondents. | Case No.: 26-cv-0896-GPC-DEB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[ECF No. 1] |

  Petitioner Jonack Clervoyant ("Petitioner") is a noncitizen currently detained at the Imperial Regional Detention Facility. ECF No. 1 ("Pet.") ¶ 3. On February 12, 2026, Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging his continued detention and naming the Warden of the Imperial Regional Detention Facility, Immigration and Customs Enforcement and Removal Operations ("ICE")'s Field Office Director for the San Diego Field Office, and several other individual agency officials as respondents ("Respondents"). *Id*. For the following reasons, the Court **GRANTS** the petition for a writ of habeas corpus. The Court VACATES the hearing set for February 27, 2026.

/ / /

## I. BACKGROUND

### A. Factual Background

Petitioner is a national and citizen of Haiti. Pet. ¶ 21. On November 18, 2016, Petitioner entered the country and was apprehended by immigration officials. *Id*.; ECF No. 4 ("Ret."), Ex. 1. On December 2, 2016, Respondents was released on Alternative to Detention and was paroled into the U.S. Ret., Ex. 1; Pet. ¶ 22. About two weeks after being released on parole, ICE removed his GPS monitoring and informed Petitioner that further check-ins were not required. Pet. ¶ 22.

Petitioner timely filed an affirmative asylum application and for Temporary Protected Status (TPS). *Id*. ¶ 23. He was subsequently placed in removal proceedings. *Id*. Petitioner received employment authorization, a social security card, and a driver's license and was working as a truck driver. *Id*. At the time of his re-arrest, he had a scheduled immigration court date of July 15, 2027. *Id*.; ECF No. 1-2. Petitioner has not violated any of the conditions of his release since being paroled into the U.S. Pet. ¶ 26.

On January 16, 2026, Petitioner was stopped at a border patrol immigration check point while transporting cargo from Arizona to California. *Id*. ¶ 24; Ret., Ex. 2. He was questioned about his citizenship and presented both his driver's license and employment authorization. *Id*. Petitioner informed the border patrol officers that he was from Haiti and had current TPS status. Pet. ¶ 24. The officers found negative results for criminal records but determined Petitioner was subject to redetermination. Ret., Ex. 2. They then detained Petitioner. *Id*. Petitioner did not receive written notice of the reason for his re-detention or a hearing before a neutral decisionmaker. *Id*. After being detained, Petitioner was informed that his immigration court date was scheduled "too far out" and "that he must appear for an earlier court date." Pet. ¶ 24. Petitioner was eventually transported to and remains at the Imperial Regional Detention Facility. *Id*. ¶ 25.

### B. Procedural Background

On February 12, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging his continued immigration detention.

ECF No. 1. On February 17, 2026, Respondent filed a response to the habeas petition. ECF No. 4 ("Ret."). On February 19, 2026, Petitioner filed a traverse. ECF No. 5.

Petitioner presents two claims. First, Petitioner alleges that his detention without written notice and a meaningful opportunity to be heard violates the Due Process Clause of the Fifth Amendment. Pet. ¶¶ 38-41. Second, Petitioner alleges that his re-detention by ICE was a categorical revocation of his release without consideration of his individualized facts in violation of the Administrative Procedure Act ("APA"). *Id*. ¶¶ 42-47.

Petitioner requests that the Court grant the Petition for Writ of Habeas Corpus, ordering his release and enjoin Respondents from adding additional requirements to Petitioner's original release conditions. Pet. at 12.-13 [1] Petitioner also requests the award of Petitioner's attorney's fees and costs under the Equal Access to Justice Act, as well as under any other basis justified under law. *Id*. at 13.

## II. STATUTORY FRAMEWORK

### A. Standard & Expedited Removal Proceedings

An arriving noncitizen seeking admission into the United States at a U.S. Port of Entry is "processed either through expedited removal proceedings or through regular removal proceedings." *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 507 (9th Cir. 2019). The regular removal procedure is also known as "section 240 proceedings." 240 proceedings involve an evidentiary hearing before an immigration judge and the ability for the individual to apply for asylum if he would be persecuted upon return to his home country. 8 U.S.C. § 1229a(a)(1), (b)(1); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Noncitizens seeking asylum are guaranteed due process under the 5th Amendment throughout this process. *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The DHS Secretary has discretion to release a noncitizen on parole during this process. In one procedure, an arriving asylum seeker may be paroled "for urgent

---

[1] Page numbers reflect CM/ECF pagination.

humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). A separate procedure puts the immigrant in conditional parole. *Id*. § 1226(a). In either case, to release a noncitizen from custody requires a case-by-case determination, where the noncitizen must "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

The second, more streamlined process is expedited removal, governed by 8 U.S.C. § 1225. Under these proceedings, noncitizens can be ordered removed by an immigration officer "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). Because of the truncated procedure, expedited removal is limited to noncitizens meeting several requirements. First, a noncitizen is potentially eligible for expedited removal if he (1) sought to procure immigration status or citizenship via fraud or false representations or (2) "at the time of application for admission," failed to satisfy certain documentation requirements. *See* 8 U.S.C. § 1225(b)(1)(A)(i); 8 U.S.C. §§ 1182(a)(6)(C), 1182(a)(7). Second, expedited removal is further cabined to noncitizens who 1) are categorized as "arriving in the United States," or 2) have "not been admitted or paroled into the United States" and cannot affirmatively show they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id*. § 1225(b)(1)(A)(i)–(iii). Within that second requirement, the Attorney General can designate the population of noncitizens subject to expedited removal. *Id*. § 1225(b)(1)(A)(iii)(I).

Once detained under expedited removal, if the noncitizen indicates an intention to apply for asylum and the asylum officer finds the fear to return to be credible, the applicant's claim will be fully considered in a standard removal hearing. *Thuraissigiam*, 591 U.S. 103, 110 (2020).

### B. 2025 Designation for Expedited Removal

The Attorney General has delegated the office's expedited removal designation power to the DHS Secretary. Before January 2025, DHS had only designated noncitizens

as eligible for expedited removal if they were identified as "arriving," had arrived by sea within the last two years, or had been apprehended within 14 days of entry and 100 miles of the border. *See* Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67 Fed. Reg. 68924, 68924 (Nov. 13, 2002); Designating Aliens For Expedited Removal, 69 Fed. Reg. 48877, 48879 (Aug. 11, 2004). In January 2025, DHS published the 2025 Designation, authorizing expedited removal to be exercised to the "full scope of its statutory authority." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139, 8139 (Jan. 24, 2025). DHS has stated that this full scope applies to noncitizens "who are encountered anywhere in the United States more than 100 air miles from a U.S. international land border, and who have been continuously present in the United States for at least 14 days but for less than two years." *Id*.

In its implementation of the 2025 Designation, "the Government began targeting for expedited removal people already in section 240 removal proceedings, many of whom are pursuing asylum and other collateral relief." *Make the Rd. New York v. Noem*, 805 F. Supp. 3d 139, 152 (D.D.C. 2025).

## III. DISCUSSION

### A. Jurisdiction: Section 1252(g) – Decisions by Attorney General

8 U.S.C. § 1252(g) states that, with limited exceptions, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien." 8 U.S.C. § 1252(g) (emphasis added); *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482 (1999). In that light, § 1252(g) is a narrow statutory provision that concentrates on those three discrete actions. *Reno*, 525 U.S. at 482. Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025).

Respondents argue that the § 1252(g) bar applies because Petitioner's claims arise "from the decision or action by the [the government] to commence proceedings." 8 U.S.C. § 1252(g). However, unlike Respondents' characterization, Petitioner does not challenge the decision to commence proceedings or even the legitimacy of the removal proceedings, which had begun before his re-detainment. Instead, Petitioner challenges the legality of detention during removal proceedings. Pet. ¶¶ 38-47.

Further, a decision to detain Petitioner does not fall within the three discrete actions identified in § 1252(g) and, thus, would not deprive the Court's jurisdiction. *See, e.g.*, *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 704 (D. Minn. 2025) (finding a claim against detention did not fall under Section 1252(g)); *Mahdawi v. Trump*, 781 F. Supp. 3d 214, 224-26 (D. Vt. 2025) (same); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020) ("Although the court may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution.").

Thus, § 1252(g) does not present a jurisdictional bar to the instant petition.

### B. Merits

Petitioner claims his detention violates the Fifth Amendment Due Process Clause and the APA. Pet. ¶¶ 38-47. Respondents maintain that Petitioner is mandatorily detained under 8 U.S.C. § 1225(b)(2) and that his detainment does not violate due process. Ret. at 5-10.

#### i. Fifth Amendment Due Process
##### 1. Entitlement to Due Process Rights

The Fifth Amendment guarantees that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Though noncitizens do not enjoy constitutional protections outside our borders, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Under this wide umbrella, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

Here, Petitioner has "passed through our gates" and "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Because Petitioner has developed an interest in remaining during his time here, "the procedures used to remove [him] must adequately protect" that interest. *Make the Rd. New York v. Noem*, 805 F. Supp. 3d 139, 159 (D.D.C. 2025).

The Respondents, however, rely heavily on *Thuraissigiam* and contend that the Petitioner is only afforded the due process rights statutorily afforded by Congress. Pet. at 7. Thus, in their view, Petitioner's detention does not violate the Fifth Amendment's Due Process Clause because the statutory authority of 8 U.S.C. § 1225(b)(2), which they assert Petitioner has been detained under, does not afford him a right to a determination by this Court as to whether his release is warranted nor a right to a bond hearing before an immigration judge. *Id*. at 7-8.

However, this is a misreading of *Thuraissigiam.* As Respondents acknowledge in their return, *Thuraissigiam* "addressed the due process rights of…inadmissible *arriving* noncitizens." *Id*. at 7 (emphasis added). In that case, the respondent was a noncitizen detained close to the border and shortly after unlawful entry, and keeping those characteristics in mind, the Supreme Court held that those "in *respondent*'s position ha[ve] only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (emphasis added). This holding only reinforced the precedent that noncitizens "on the threshold of initial entry stand[ ] on a different footing" than those who have "passed through our gates." *Mezei*, 345 U.S. 212.

In this case, Petitioner is not an "arriving" noncitizen but one that has present in our country for over nine years. This substantial amount of time indicates he is afforded the

Fifth Amendment's guaranteed due process before removal. *See Yamataya v. Fisher,* 189 U.S. 86, 87 (1903) (finding a noncitizen was entitled to due process before removal despite having spent only four days in the US).

### 2. Government's Adherence to Due Process

Generally, due process protections depend on the situation and must account for (1) the private interest at issue, (2) the risk of erroneous deprivation of that interest through the procedures used, and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). Here, Petitioner alleges that he was detained while his asylum application was pending and while on parole without any opportunity to be heard prior to being arrested and detained. Pet. ¶¶ 38-41.

First, Petitioner has a private interest in remaining free, which developed over the more than nine years he resided in the United States. *See Morrissey v. Brewer,* 408 U.S. 471, 482-483 (1972); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). This liberty interest applies to Petitioner, even in his parole status. For example, *Morrissey*—though analyzing the criminal parole context—found that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others…[thus it] must be seen within the protection of the [Fifth] Amendment." 408 U.S. at 482.

In the deportation context, detention has minimum due process protections. Generally, detention is seen "as a constitutionally valid aspect of the deportation process," *Demore v. Kim*, 538 U.S. 510, 523 (2003), and the government holds the discretion to detain an immigrant pending removal, 8 U.S.C. § 1226(c). However, that discretion is not unbounded. Detention pending removal proceedings has "two regulatory goals"— ensuring future appearances and preventing danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This logically also extends to the granting of parole and its revocation. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("[Petitioner's]

release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."). These primary goals provide guidance for the floor of due process afforded to noncitizens for detention and parole.

Further, Petitioner has a Fifth Amendment right to due process of law in deportation proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Here, Petitioner was initially provided due process for his removal proceedings following his entry into the United States on November 18, 2016. Pet. ¶ 1. He was released on parole three weeks after being originally detained, and approximately two weeks after his release, his GPS monitoring was removed. *Id*. Petitioner was also informed that no additional ICE check-ins would be required. *Id*. He has timely applied for asylum, received TPS, and obtained a work permit, social security card, and a driver's license. *Id*. ¶ 2. He has also appeared before the immigration court at his scheduled hearings. *Id*. The proceedings have created a protectable expectation of his due process rights in his removal proceedings and the fair procedures this country guarantees. Thus, Petitioner was entitled to due process in his parole revocation and detainment. Particularly, he was entitled to both notification of revocation and the reasoning for revocation, if not also an opportunity to be heard and contest the determination.

Second, the procedures used present a substantial risk of erroneous deprivation of those interests and are not outweighed by the Government's interest. In *Make the Rd. New York v. Noem*, which considers the application of the 2025 Designation, the court determined that "[b]efore removing someone through expedited removal, the Government must make several threshold determinations: whether the individual has been continually present in the United States for two years; whether they have previously been admitted or paroled; whether they are inadmissible on one of the grounds that make them eligible for expedited removal; whether they have a credible fear of persecution; and whether they are a citizen, lawful permanent resident, refugee, or asylee." 805 F. Supp. 3d 139, 163 (D.D.C.

2025). Each of these determinations present a substantial risk of error and harm to Petitioner's interests in remaining at liberty. This is especially true in regard to the credible fear interview—where individuals might not be appropriately referred for the interview or not afforded an effective opportunity to be heard—and the continual presence determination. *Id*. at 163-65.

Respondents have also failed to demonstrate a significant interest in Petitioner's detention. Respondents did not provide Petitioner individualized notice or reasoning prior to his arrest and detention on January 16, 2026, and Respondent has presented no legitimate reason for why those decisions were made. Petitioner does not have a criminal record, complied with the conditions of his parole, and appeared for his immigration court hearings prior to detention. Pet. ¶¶ 1-2, 26. There is no indication that he is a flight risk or presents a danger to the community, which strike at the core, guiding goals for parole, and Respondent has not supplied any additional information to the contrary. Denying Petitioner notice and reasoning on revocation of his parole took away a meaningful opportunity to contest and violated due process. *See Pinchi*, 792 F. Supp. 3d at 1032-35; *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146-47 (D. Or. 2025) (D. Or. July 9, 2025).

Finally, "[t]he Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 267 (1994). The Supreme Court has limited retroactivity under the Due Process Clause under its "prohibition against arbitrary and irrational legislation." *United States v. Carlton,* 512 U.S. 26, 30 (1994) (quoting *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733 (1984)). Abiding to this principle, "administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

The 2025 Designation's language does not clearly require that it be applied to individuals who entered the United States prior to its effective date. Therefore, executing the Designation over Petitioner who entered the country before the Designation's effective date violated the Due Process Clause.

For those reasons, the Court finds that Petitioner's due process rights have been violated.

### ii. Administrative Procedure Act

Under the APA, an agency action may be set aside if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). An action is an abuse of discretion if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). For a challenged agency action to be upheld, the agency "must explain the evidence which is available, and must offer a rational connection between the facts found and the choice made." *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983) (internal quotations omitted) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

Petitioner argues Respondent violated APA when they detained him without notice or explanation. Pet. ¶ 47.

### 1. Legal Standards under the APA

"Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704; *Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 61–62 (2004). Reviewable agency action includes "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Agency action is deemed final if it (1) "impose[s] an obligation, den[ies] a right or fix[es] some legal relationship as a consummation of the administrative process," *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 113 (1948), and (2) is an action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow,'" *Bennett v. Spear*, 520

U.S. 154, 178 (1997) (quoting *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

### 2. Failure to Abide by APA

In general, "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Following this, a noncitizen should not be returned to custody unless the purposes of the parole have been served. *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1144-45 (D. Or. 2025). Additionally, under regulation, parole must be terminated upon written notice after an individualized determination that the purposes no longer apply. 8 C.F.R. § 212.5(e)(2)(i); *see, e.g., Bostock,* 792 F. Supp. 3d at 1146-47 (finding parolee must receive written notice of impending revocation with reasons for revocation); *Castellon v. Kaiser*, No. 1:25-CV-00968 JLT EPG, 2025 WL 2373425, at *6 (E.D. Cal. Aug. 14, 2025) (finding a case-by-case analysis is needed to revoke parole); *but see Doe v. Noem*, No. 25-1384, 2025 WL 2630395, at *9 (1st Cir. Sept. 12, 2025) (finding an individualized termination of parole is not required). In sum, to meet statutory and regulatory requirements, revocation should only occur when the parole's purpose is served, *and* the noncitizen is provided written notice. *Bostock*, 792 F. Supp. 3d at 1144-46.

However, neither of the other two conditions were met here. First, Petitioner was not provided any notice as to the termination of his parole. Second, Respondent must provide at minimum some reasoning explaining why the Petitioner would now be considered a flight risk or danger to the community. *See Castellon*, 2025 WL 2373425, at *12; *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-35 (N.D. Cal. July 24, 2025). Given Respondent has not attempted to justify the revocation for Petitioner, this Court holds the Respondent has acted arbitrarily and capriciously in violation of the APA.

### 3. Initiation of Expedited Removal Proceedings

The application of expedited removal is limited to noncitizens who meet several requirements. One of those requirements cabins initiation of expedited removal to

noncitizens who (1) are categorized as "arriving in the United States," or (2) have "not been admitted or paroled into the United States" and cannot affirmatively show they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(i)–(iii); *see also Coalition for Human Immigrant Rights v. Noem*, No. 25 Civ. 872 (JMC), 2025 WL 2192986, at *30 (D.D.C. Aug. 1, 2025).

Petitioner is no longer an "arriving" noncitizen after having resided here for over nine years. In addition, beyond the fact that he has been present in this country for a 9-year period, he also has been paroled into the United States. Therefore, the Court finds that Petitioner could not be subject to § 1225.

In sum, Respondent's actions are arbitrary, fail to adhere to the law, and therefore, violate the APA.

## IV. CONCLUSION

Based on the reasoning above, the Court **GRANTS** the petition for writ of habeas corpus. The parties are **ORDERED** to file a Joint Status Report within 72 hours of this Order's filing, confirming Petitioner's release on his original parole conditions. Further, in aid of the Court's jurisdiction, which is hereby retained, the Court **ORDERS** pursuant to the All Writs Act, 28 U.S.C. § 1651, that Respondent shall not cause Petitioner to be re-detained during the pendency of his removal proceedings without prior leave of this Court. The Clerk of Court **SHALL** enter judgment in Petitioner's favor and close this case.[2]

**IT IS SO ORDERED.**

Dated: February 19, 2026

Hon. Gonzalo P. Curiel
United States District Judge

---

[2] In his prayer for relief, Petitioner requests an award of costs and reasonable attorney's fees. Pet. at 13. Petitioner's counsel may submit an appropriate EAJA fee application within 30 days of the issuance of this Order.